UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 1:19-cr-00204-JAW |
| | ) | |
| MARC J. KARUN | ) | |

## ORDER ON MOTION TO DISMISS INDICTMENT

A defendant moves to dismiss an indictment, arguing that 18 U.S.C. §§ 922(g)(1) and 922(k) violate his rights under the Second Amendment of the United States Constitution and exceed Congress' legislative power under the Commerce Clause of Article I of the United States Constitution. Because the defendant's position is contrary to clear United States Supreme Court and First Circuit Court of Appeals precedent, the Court dismisses without prejudice the defendant's motion to dismiss.

## I.    BACKGROUND

On November 6, 2019, a grand jury returned a one-count indictment against Marc Karun, charging him with possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1). *Indictment* (ECF No. 1). On December 11, 2019, a grand jury returned a two-count superseding indictment, charging Mr. Karun with (1) possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1), and (2) possession of a firearm with an obliterated serial number in violation of 18 U.S.C. § 922(k). *Superseding Indictment* (ECF No. 21). On August 24, 2020, Mr. Karun filed a motion to suppress firearms and ammunition seized by police during a search of his

home. *Def.'s Mot. to Suppress Evid. Obtained in Violation of the Fourth Amendment* (ECF No. 41). On January 21, 2021, the Court denied the motion to suppress. *Order on Mot. to Suppress* (ECF No. 53).

On June 1, 2021, after several extensions of time, Mr. Karun filed a motion to dismiss the indictment, arguing that 18 U.S.C. §§ 922(g)(1) and 922(k) violate his rights under the Second Amendment to the United States Constitution and exceed Congress' authority under the Commerce Clause of Article I of the United States Constitution. *Def.'s Mot. to Dismiss the Indictment* (ECF No. 62) (*Def.'s Mot.*). On June 22, 2021, the Government responded in opposition. *Gov't Resp. to Def.'s Mot. to Dismiss the Indictment* (ECF No. 64) (*Gov't's Opp'n*). Mr. Karun did not reply.

## II.   THE PARTIES' POSITIONS

### A.   Marc Karun's Motion

Mr. Karun asks that the Court dismiss the indictment on the grounds that 18 U.S.C. §§ 922(g)(1) and 922(k) "violate his rights under the Second Amendment to the United States Constitution and exceed the authority of Congress pursuant to the Commerce Clause of Article I of the United States Constitution." *Def.'s Mot.* at 1. He first argues that section 922(g)(1) "is a violation of the individual right to possess firearms guaranteed by the Second Amendment and is therefore facially unconstitutional." *Id.* at 3. Relying on the dissent of Justice Barrett, then a judge on the Seventh Circuit Court of Appeals, in *Kanter v. Barr*, 919 F.3d 437 (7th Cir. 2019), Mr. Karun "adopts the position that all people have an inherent right to keep and bear arms and that no particular class of person necessarily falls outside the scope of

the Second Amendment." *Id.* (citing *Kanter*, 919 F.3d at 451-52 (Barrett, J., dissenting)).

Mr. Karun claims his position is supported by the United States Supreme Court's conclusion in *District of Columbia v. Heller*, 554 U.S. 570 (2008), and that "the word 'people' in the text of the Second Amendment refers to 'all Americans.'" *Id.* (citing *Heller*, 554 U.S. at 580). He acknowledges dicta in *Heller* that describe the "longstanding prohibitions on the possession of firearms by felons" as "presumptively lawful regulatory measures," but he argues the *Heller* Court "did not 'undertake an exhaustive historical analysis . . . of the full scope of the Second Amendment.'" *Id.* (citing *Heller*, 554 U.S. at 626). Mr. Karun provides his own historical analysis, attempting to undermine three historical arguments "generally offered in support" of a categorical ban on possession of firearms by felons: (1) "some founding-era legislatures may have prohibited felons from exercising the right to bear arms," (2) "the existence of capital punishment for felony offenses at the time of the founding supports the notion that felons could also be deprived of the right to possess firearms," and (3) "founding-era legislatures imposed virtue-based restrictions on certain civic rights, and the right to possess firearms is a civic right." *Id.* (citing *Kanter*, 919 F.3d at 454 (Barrett, J., dissenting)).

Mr. Karun next argues that sections 922(g)(1) and 922(k) "exceed the authority of Congress pursuant to the Commerce Clause of Article I of the United States Constitution." *Id.* at 7. Relying on Justice Thomas' concurrence in *United States v. Lopez*, 514 U.S. 549 (1995), Mr. Karun contends that "[n]either the text nor the

structure of Article I, section 8 support the proposition that Congress has the authority to regulate any activity that 'substantially affects' interstate commerce." *Id.* at 7-8 (citing *Lopez*, 514 U.S. at 587-88 (Thomas, J., concurring)).  He asserts that "mere intrastate possession of a firearm is not a form of interstate commerce within the reach of the federal criminal law" and argues that merely because "the firearms named in the indictment were once 'shipped and transported in interstate commerce' does not change the fact that [Mr. Karun's] alleged conduct involves nothing more than possession within the State of Maine."  *Id.* at 9.  He concludes by stating "[i]f the federal government is to be one of limited powers, then the commerce power cannot extend to any activity involving objects or materials that once moved across state lines." *Id.*

###     B.     The Government's Opposition

The Government opposes Mr. Karun's motion, arguing that neither the Second Amendment nor the Commerce Clause argument "find support in [Mr. Karun's] cited authorities, and both have been rejected by the First Circuit." *Gov't's Opp'n* at 2.  The Government first addresses Mr. Karun's Second Amendment argument, asserting that "Mr. Karun has been convicted of multiple violent and dangerous felonies and is therefore appropriately barred from possessing firearms under 18 U.S.C. § 922(g)(1)." *Id.*  The Government quotes *Heller* as expressly rejecting Mr. Karun's argument: "[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or

4

laws imposing conditions and qualifications on the commercial sale of arms." *Id.* at 3 (quoting *Heller*, 554 U.S. at 626-27) (emphasis added by the Government).   The Government next contends that "appellate courts, including the First Circuit, have consistently upheld § 922(g)(1) after *Heller*," and claims that "no circuit court to address the issue has held that violent or otherwise dangerous felons are not properly, and constitutionally, barred from possessing firearms." *Id.* at 6-8.   Finally, the Government argues that "Mr. Karun's criminal history and criminal conduct place him squarely within the realm of conduct appropriately regulated by statute." *Id.* at 8.

The Government next argues that "Congress's restriction on possession of firearms in Sections 922(g)(1) and 922(k) are within the scope of its Commerce Clause powers." *Id.*   It contends that "[t]he charges in the indictment allege violations of 18 U.S.C. §§ 922(g)(1) and 922(k), which each contain a jurisdictional element relating to the possession of the firearm in interstate or foreign commerce, or to the firearm's own status of having previously travelled in . . . interstate or foreign commerce." *Id.* at 8-9.   The Government further argues that "even if the connection to interstate commerce had not been explicit in the subject statutes, Congress also derives Commerce Clause authority from the substantial effect firearms have on interstate commerce." *Id.* at 9.

## III.   LEGAL STANDARD

Unlike civil actions, an indictment is not generally subject to dispositive motion practice. *United States v. Poulin*, 645 F. Supp. 2d 17, 22 (D. Me. 2009); *see*

*also United States v. Li*, 206 F.3d 56, 62 (1st Cir. 2000).  "[D]ismissing an indictment is an extraordinary step," *Li*, 206 F.3d at 62 (quoting *United States v. Stokes*, 124 F.3d 39, 44 (1st Cir. 1997)), because, by returning an indictment, a grand jury is carrying out a constitutionally sanctioned function.  *See* U.S. CONST. amend. V ("No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury . . .").  In the First Circuit's words, "[w]hen a federal court uses its supervisory power to dismiss an indictment it directly encroaches upon the fundamental role of the grand jury."  *Whitehouse v. U.S. Dist. Ct.*, 53 F.3d 1349, 1360 (1st Cir. 1995).  This power is "appropriately reserved, therefore, for extremely limited circumstances," *id.* (citing *Bank of Nova Scotia v. United States*, 487 U.S. 250, 263 (1988)), and should be "exercised with caution," *United States v. Cameron*, 662 F. Supp. 2d 177, 180 (D. Me. 2009).

In addressing a challenge to an indictment, a district court must simply determine "whether the document sketches out the elements of the crime and the nature of the charge so that the defendant can prepare a defense and plead double jeopardy in any future prosecution for the same offense."  *United States v. Guerrier*, 669 F.3d 1, 3 (1st Cir. 2011) (citation omitted).  The Court should not inquire into the sufficiency of the evidence supporting the indictment.  *United States v. Maceo*, 873 F.2d 1, 2-3 (1st Cir. 1989) (citation omitted) ("an indictment returned by a legally constituted and unbiased grand jury, . . . if valid on its face, is enough to call for trial of the charge on the merits").  Rather, at this stage, the Court "must accept the allegations in the indictment as true."  *United States v. Young*, 694 F. Supp. 2d 25,

6

27 (D. Me. 2010) (citing *Boyce Motor Lines, Inc. v. United States*, 342 U.S. 337, 343 n.16 (1952)); *see* FED. R. CRIM. P. 12(b)(1) ("A party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits").

## IV.   DISCUSSION

The superseding indictment charges Mr. Karun with violating 18 U.S.C. §§ 922(g)(1) and 922(k).  Section 922(g)(1) prohibits a felon from possessing a firearm that has been shipped or transported in interstate commerce.[1]  Section 922(k) prohibits possession of a firearm with an obliterated serial number that has been shipped or transported in interstate commerce.[2]

The superseding indictment alleges that Mr. Karun knowingly possessed sixty firearms, including pistols, revolvers, rifles, and a shotgun, as well as 14,632 rounds of assorted-caliber ammunition.  *Superseding Indictment* at 1-4.  The superseding

---

[1]    Section 922(g)(1) provides:

It shall be unlawful for any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(1).

[2]    Section 922(k) provides:

It shall be unlawful for any person knowingly to transport, ship, or receive, in interstate or foreign commerce, any firearm which has had the importer's or manufacturer's serial number removed, obliterated, or altered or to possess or receive any firearm which has had the importer's or manufacturer's serial number removed, obliterated, or altered and has, at any time, been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(k).

indictment further alleges that the firearms and ammunition were shipped and transported in interstate commerce, and that at the time of possession, Mr. Karun knew he had been previously convicted of multiple felonies, including sexual assault in the first degree, attempted sexual assault in the first degree, burglary in the third degree, and larceny in the third degree. *Id.* at 4. Finally, the superseding indictment alleges that Mr. Karun knowingly possessed a rifle that had been shipped and transported in interstate commerce, and the manufacturer's serial number had been removed, altered and obliterated. *Id.* at 5.

Notwithstanding these allegations, Mr. Karun urges the Court to dismiss the indictment because 18 U.S.C. §§ 922(g)(1) and 922(k) violate his Second Amendment rights and exceed Congress' powers under the Commerce Clause.

### A.    Second Amendment

The Second Amendment to the United States Constitution states that "[a] well regulated militia, being necessary to the security of a free state, the right of the people to keep and bear arms, shall not be infringed." U.S. CONST. amend. II. Mr. Karun argues that section 922(g)(1) is facially unconstitutional because "all people have an inherent right to keep and bear arms and . . . no particular class of person necessarily falls outside the scope of the Second Amendment." *Def.'s Mot.* at 3. In Mr. Karun's opinion, section 922(g)(1) is facially unconstitutional because it bans an entire class of people—namely, felons—from possessing firearms. Mr. Karun does not argue that 18 U.S.C. § 922(k) violates the Second Amendment.

Mr. Karun's Second Amendment arguments are wrong as a matter of law. As the Government notes, this Court is bound by Supreme Court and First Circuit precedent. In *District of Columbia v. Heller*, 554 U.S. 570 (2008), the Supreme Court recognized an individual right under the Second Amendment to bear arms and struck down the District of Columbia's outright ban on handgun possession. However, the *Heller* Court also emphasized that "the right secured by the Second Amendment is not unlimited" and "nothing in [its] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill . . . ." 554 U.S. at 626. The *Heller* Court referred to felon in possession laws as "presumptively lawful regulatory measures." *Id.* at 627 n.26. The Supreme Court has since explained that it "made it clear in *Heller* that [its] holding did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons . . . .'" *McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010).

In *United States v. Torres-Rosario*, 658 F.3d 110 (1st Cir. 2011), a defendant convicted of violating section 922(g)(1) argued that after *Heller* and *McDonald*, section 922(g)(1) is unconstitutional. *Id.* at 112. The First Circuit rejected the defendant's argument, noting that "[a]ll of the circuits to face the issue post *Heller* have rejected blanket challenges to felon in possession laws." *Id.* at 113; *see id.* at 113 n.1 (collecting cases). The *Torres-Rosario* Court explained that the *Heller* Court's statement that felon in possession bans were "presumptively lawful" "at most . . . reserves the possibility of yet to be developed qualifications." *Id.* "Assuming *arguendo* that the Supreme Court might find some felonies so tame and technical as

9

to be insufficient to justify the ban," the First Circuit concluded that "drug dealing is not likely to be among them." *Id.* Other First Circuit precedent is in accord. *See, e.g.*, *United States v. Booker*, 644 F.3d 12, 22-26 (1st Cir. 2011) (rejecting a Second Amendment challenge to 18 U.S.C. § 922(g)(9)); *see also United States v. Emond*, No. 2:12-cr-00044-NT, 2012 U.S. Dist. LEXIS 149295, at *9-17 (D. Me. Oct. 17, 2012) (rejecting a Second Amendment challenge to 18 U.S.C. § 922(g)(3)).

Mr. Karun acknowledges the Supreme Court's stance in *Heller* but quotes the *Heller* majority as saying that it did not "undertake an exhaustive historical analysis . . . of the full scope of the Second Amendment." Mr. Karun then supplies his own historical analysis, leaning heavily on then-Judge Barrett's dissent in *Kanter v. Barr*, 919 F.3d 437 (7th Cir. 2019). *Def.'s Mot.* at 3 (quoting *Heller*, 554 U.S. at 626). Mr. Karun is correct that Justice Scalia's otherwise extensive historical analysis did not extend to cases not before the Supreme Court, and he demurred from performing a historical exposition as to the "the full scope of the Second Amendment." *Heller*, 554 U.S. at 626. Justice Scalia's complete sentence on this subject reads:

> Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, <u>nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons</u> and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

*Id.* at 626 (emphasis supplied). Thus, to the extent the *Heller* majority discussed whether the "longstanding prohibition[]" against felons possessing firearms was

constitutional in light of the individual right to bear arms, Justice Scalia strongly suggested that these laws would survive *Heller*.

Following *Heller*, circuit courts have been presented with the contention that the broad statutory ban against felons of all stripes possessing firearms conflicts with the right of personal possession *Heller* recognized.   As the majority in *Kanter* observed, "every federal court of appeals to address the issue has held that § 922(g)(1) does not violate the Second Amendment on its face."   *Kanter*, 919 F.3d at 442 (collecting cases from eleven circuits).  As Mr. Karun has been careful to point out, his Second Amendment challenge to § 922(g)(1) is limited to a facial challenge.  *Def.'s Mot.* at 6 ("Mr. Karun therefore respectfully requests that this Court dismiss the indictment in the above-captioned matter on the grounds that the statute on which it is based violates the Second Amendment <u>on its face</u>") (emphasis supplied).  There is no reason to think that the First Circuit, if squarely presented with a facial challenge on Second Amendment grounds to § 922(g)(1), would not join its sister circuits in their unanimous rejection of a facial challenge to the constitutionality of the statute.

Even though Mr. Karun has not made an "as applied" claim of constitutional infirmity, the only authority that gives a glimmer of hope to his Second Amendment argument involves "as applied" challenges.  The most powerful authority in favor of constitutional limitations on section 922(g)(1) (and its Wisconsin statutory counterpart) is Justice Barrett's *Kanter* dissent, but as then-Judge Barrett pointed out, her dissent was grounded on an as-applied, not facial challenge.  *Kanter*, 919

F.3d at 451 (Barrett, J., dissenting) ("[The federal and state statutes'] dispossession of *all* felons—both violent and nonviolent—is unconstitutional as applied to Kanter") (emphasis in original).

Yet, even if the Court charitably construes Mr. Karun's motion as including an "as applied" challenge, his argument still fails.  In *Kanter*, the majority cited five circuit courts as holding that prohibitions against felons being in possession of firearms is "always constitutional as applied to felons as a class, regardless of their individual circumstances or the nature of their offenses" and three circuit courts as having "left room for as-applied challenges to the statute."  *Id.* at 442-43 (collecting cases).  Discussing *Torres-Rosario*, the *Kanter* majority suggested that the First Circuit "has not foreclosed as-applied challenges, but it has expressed some skepticism about them."  *Id.* at 443.

Even assuming that *Torres-Rosario* stands for the proposition that there might be some categories of timid felons for whom the prohibition against firearm possession could violate the Second Amendment, Mr. Karun does not fit within any conceivable exception to the general prohibition.  In her dissent in *Kanter*, now-Justice Barrett was careful to point out that the conviction in that case involved mail fraud, and therefore "the reasoning that supports the categorical disarmament of violent felons—that past violence is predictive of future violence—simply does not apply."  *Kanter*, 919 F.3d at 467 (Barrett, J., dissenting).  Mr. Karun, on the other hand, has previously been convicted of first degree sexual assault, first degree attempted sexual assault, third degree burglary, and third degree larceny.

"[A]ssuming *arguendo* that the Supreme Court might find some felonies so tame and technical as to be insufficient to justify the ban," violent felonies, such as the sexual assault and burglary felonies in this case, are "not likely to be among them." *Torres-Rosario*, 658 F.3d at 113. The bottom line is that even if a case could be made that, as applied, a ban against felons possessing firearms violates the Second Amendment, Mr. Karun's case is not that case.

Whether the Court views Mr. Karun's motion to dismiss the indictment on Second Amendment grounds as a facial or as-applied challenge, this Court is foreclosed from granting his motion because to do so would violate this Court's obligation to follow the law as pronounced by the higher courts to which this Court owes allegiance. *Eulitt v. Me. Dep't of Educ.*, 386 F.3d 344, 348 (1st Cir. 2004) ("[S]tare decisis 'renders the ruling of *law* in a case binding in future cases before the same court or other courts owing obedience to the decision'") (quoting *Gately v. Massachusetts*, 2 F.3d 1221, 1226 (1st Cir. 1993)) (emphasis in original).

## B. Commerce Clause

The Commerce Clause of the United States Constitution states that "Congress shall have power . . . to regulate commerce with foreign nations, and among the several states, and with the Indian tribes." U.S. CONST., art. I, § 8, cl. 3. Mr. Karun contends that sections 922(g)(1) and 922(k) exceed Congress' Commerce Clause power because the Commerce Clause does not support the proposition that "Congress has the authority to regulate any activity that 'substantially affects' interstate commerce." *Def.'s Mot.* at 7. He argues that "mere intrastate possession of a firearm

is not a form of interstate commerce within the reach of the federal criminal law." *Id.* at 9.

The Court is again bound by controlling precedent. In *United States v. Scarborough*, 431 U.S. 563 (1977), the Supreme Court established the "minimal nexus" standard, which requires only that the firearm has traveled in interstate commerce "at some time." *Id.* at 575-77. In *United States v. Wilkerson*, 411 F.3d 1 (1st Cir. 2005), the First Circuit clarified that "the evidence that a firearm has traveled at some time in interstate commerce is sufficient to establish a nexus between the firearm and interstate commerce." *Id.* at 10.

In *United States v. Roszkowski*, 700 F.3d 50 (1st Cir. 2012), the defendant was convicted under sections 922(g)(1) and 922(k). *Id.* at 52. The defendant challenged his conviction on appeal, arguing that sections 922(g)(1) and 922(k) exceeded Congress' Commerce Clause authority, and were therefore unenforceable. *Id.* at 57. The *Roszkowski* Court quickly rejected the defendant's argument as "a claim which we have repeatedly and unreservedly rejected," and concluded that sections 922(g) and 922(k) "reside in the heartland of Congress's authority under the Commerce Clause." *Id.* at 57-59. *See United States v. Joost*, 133 F.3d 125, 131 (1st Cir. 1998) (rejecting a Commerce Clause challenge to 18 U.S.C. § 922(g)(1) as "hopeless"); *United States v. Diaz-Martinez*, 71 F.3d 946, 953 (1st Cir. 1995) (concluding 18 U.S.C. § 922(k) is a valid exercise of Congress' Commerce Clause powers).

The Court readily rejects Mr. Karun's argument that pursuant to *United States v. Lopez*, 514 U.S. 549 (1995), Congress lacks the authority to regulate activity

that "substantially affects" interstate commerce for two reasons.  First, it flies in the face of the Supreme Court's holding that "Congress has the power to regulate activities that substantially affect interstate commerce." *Gonzales v. Raich*, 545 U.S. 1, 17 (2005).  Second, Mr. Karun's argument is inapposite because sections 922(g) and 922(k) both explicitly require the firearm be transported or shipped in interstate commerce, which is enough to satisfy the minimal nexus standard.  *See Diaz-Martinez*, 71 F.3d at 953 (distinguishing *Lopez* because section 922(k) contains a jurisdictional element, unlike the statute at issue in *Lopez*).  The superseding indictment in this case specifically alleges that Mr. Karun's firearms had been "shipped and transported in interstate commerce," and he does not argue otherwise. *Superseding Indictment* at 4-5.  Mr. Karun may not agree with the reach of the Commerce Clause, but this Court is bound by controlling Supreme Court and First Circuit precedent.  *See Eulitt*, 386 F.3d at 348.  Therefore, the Court rejects Mr. Karun's Commerce Clause challenge to sections 922(g)(1) and 922(k).

## V.   CONCLUSION

The Court DISMISSES without prejudice Marc Karun's Motion to Dismiss the Indictment (ECF No. 62).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 19th day of July, 2021