UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:19-cr-00204-LEW |
| | ) | |
| MARC J. KARUN, | ) | |
| | ) | |
| Defendant | ) | |

**ORDER ON DEFENDANT'S MOTION TO RE-OPEN MOTION TO SUPPRESS**

The matter is before the Court on Defendant Marc Karun's Motion to Re-open Consideration of Motion to Suppress (ECF No. 111) based on newly discovered information. On January 21, 2021, the Court (Woodcock, J.) denied Defendant's motion to suppress firearms discovered in his home during the execution of a warrant to search Defendant's premises for evidence of a cold case homicide. Judge Woodcock grounded his ruling on the *Leon* good faith rule, having concluded that the search warrant affidavit did not contain probable cause to support the state court judge's issuance of the warrant, but reasoning that the officers who executed the warrant relied on the judge's issuance of the warrant in objective good faith. Order on Motion to Suppress (ECF No. 53).[1] Defendant now contends that there is new evidence that undercuts application of the good faith rule.

For reasons that follow, Defendant's motion is DENIED.

---

[1] *United States v. Karun*, 514 F. Supp. 3d 326, 343 (D. Me. 2021).

1

## Background

Judge Woodcock's Order on Motion to Suppress sets forth the salient background information concerning Defendant's motion to suppress evidence of his unlawful possession of firearms. A few months after that ruling, the government obtained an indictment charging Defendant with possession of child pornography. The government recovered the images that informed the new indictment from digital media seized at Defendant's premises in the same search that netted the firearms. Defendant mounted a similar motion to suppress in that matter (the child pornography prosecution, case number 1:21-CR-00028), and in June of 2022 both the firearm case and the child pornography case were reassigned to me. Shortly after I noticed a hearing on the motion to suppress the digital image files and related evidence, the government filed a notice of dismissal of the indictment, which motion I granted.

On the same day that the government noticed the dismissal of the child pornography case, the government also disclosed to Defendant a June 19, 2019, email that Lieutenant Art Weisgerber, the lead investigator of the cold case, sent to Detective Paulino, the forensic examiner of the seized digital media. Mot. Ex. 3 (ECF No. 111-3). Weisgerber sent the email shortly after the Maine State Police executed the search warrant. In the email, Weisgerber described the evidence he was interested in. His description was generally consistent with the search warrant's authorization. However, he also wrote that it would be "great" if the forensic search turned up "any type of possible child porn," and suggested that Paulino forward the same to the Maine State Police if discovered. The

search warrant did not authorize a search for such materials.[2] As part of his forensic search, Paulino parsed data files to isolate a set of images, determined the images' hash values, and then compared the hash values to a hash set of known images of child sexual abuse material. In effect, Paulino conducted a search for child pornography images. Both Paulino, in his affidavit, and the government, in its brief in opposition to suppression, advanced the presumption that a warrant authorizing a search of digital media permits a visual inspection of each and every image file on the media.

## Discussion

Defendant requests that I reopen the decision denying his motion to suppress evidence of firearms. The denial of the exclusionary remedy in that decision was based on the *Leon* good faith exception. Defendant contends that the lead investigator of the cold case, Lieutenant Weisgerber, crafted a search warrant affidavit designed to look like an earnest effort to recover evidence of a cold case as a pretext "to create a back door for the pursuit of digital contraband for which he knew there was no probable cause." Mot. at 30. In support of this position, Defendant advances certain critical observations Judge Woodcock made in support of the determination that the state court jurists who signed the warrants to search lacked a substantial basis for a probable cause finding.

While I can agree with Defendant's position that the warrant's authorization to seize and collect digital images was devoid of probable cause—a finding I was prepared to make

---

[2] Nor did Lieutenant Weisgerber request in his search warrant affidavit authorization to search for child pornography. Weisgerber also did not mention photographic evidence when he articulated his probable cause assessment in his affidavit, though he did request authorization to search for internet searches, logs, journals and diaries related to the cold case. Conn. Aff. and Appl. Search and Seizure Warrant ¶ 87 (ECF No. 46).

for purposes of the child pornography prosecution before that case was dismissed—I am not persuaded that the newly introduced evidence is capable of supporting the finding that Lieutenant Weisgerber's pursuit of cold case evidence was a sham.

Defendant has not provided any reason to think that Lieutenant Weisgerber's warrant application was founded on false information. An affidavit supporting a search warrant is presumed to be valid. *Franks v. Delaware*, 438 U.S. 154, 171 (1978). While a defendant may seek to rebut this presumption, a hearing to test the veracity of an affidavit supporting a search warrant is warranted only upon the defendant's "substantial showing that (1) the affiant intentionally or with reckless disregard for the truth included a false statement in the affidavit, or omitted information from the affidavit; and (2) such false statement or omitted information was material to the probable cause inquiry." *United States v. Austin*, 991 F.3d 51, 57 (1st Cir. 2021). All of the shortcomings that Judge Woodcock identified in the affidavit were fully on display for the state judges who issued the warrants. The record, in other words, reveals an affidavit lacking in persuasive force, not an affidavit designed to deceive.

In terms of the lack of persuasive force of the affidavit, that is especially apparent in relation to the warrant's authorization to seize digital image files. In regard to digital image searches, the warrant authorized, exclusively, a search for "images of the earring, underwear or bra of Kathleen Flynn to include film and digital." On the issue of preserving old mementos with digital photography, there was nothing in the search warrant affidavit or supporting materials that would tend to substantiate an inferential finding that criminals matching Defendant's profile create digital images to supplement or replace physical

mementos taken from a crime scene. Nor was there anything in the case to suggest the use of photography in connection with the crime itself. Nor could there be a reasonable inference of digital media creation at the time. The sexual assault and homicide under investigation predated digital cameras, and, insofar as Detective Paulino contemplated that Defendant may have shared an image online, the crimes also occurred well before the World Wide Web was available to the public. For all these reasons, which stack atop the other concerns identified by Judge Woodcock (e.g., passage of time and geographic distance), the authorization to seize and search for digital images was wildly overbroad.

The overbreadth assessment is a closer call, however, when one considers other evidence particularized in the application and warrant and the search for cold case evidence. If there was cause to anticipate that Defendant might possess evidence linking him to the cold case homicide, it would come from a commonsense apprehension that a serial rapist who perpetrated a vile and perverse crime of sexual assault and homicide against an eleven-year-old girl (the only homicide of which he is suspected) is emotionally tethered to the event and will keep physical mementos so long as he is able. This commonsense apprehension is bolstered by the true representations of the affiant that intimate items were never recovered from the crime scene and the slightly more forensic insight offered by a consultant that persons who kill in an intimate manner involving rape and strangulation are in fact known to have a greater tendency to behave in this manner, particularly when the victim is a child.

Although I respect and abide by Judge Woodcock's prior determination that the probable cause standard was not met in this case for purposes of the search for and seizure

of any evidence at all, nevertheless, given the totality of the circumstances it is understandable and perhaps natural that persons of reasonable caution and good conscience would discern a reasonable likelihood—albeit certainly without a high degree of assurance—that evidence was taken from the crime scene and retained by Defendant. A practical person's formulation of probabilistic outcomes in these kinds of scenarios could reasonably lead magistrates and judges to issue a search warrant for physical evidence associated with the crime of sexual assault and murder, despite the doubtful prospect of a fruitful search. Practical persons under these circumstances would likely be disturbed to hear of a judge or magistrate denying a search warrant application; disturbed not merely because there was probable cause to arrest the suspect for the crime, but also because physical items were missing from the crime scene and the characteristics of both the crime (an "intimate" homicide involving sexual assault and strangulation) and the Defendant (a serial rapist who more than once announced the intention to retain mementos) are consistent with the profile of a memento-keeper.

However, to be perfectly clear, like Judge Woodcock I see in this record something closer to reasonable suspicion than probable cause—inferences somewhat more reptilian than rational. Still, when it comes to the baseline authorization of the search warrants to conduct something more than a mere search incident to arrest, if I reopened the prior determination to reevaluate the findings of the state court judges who authorized the search, I would find that the totality of the circumstances "when seen together yield inferences that deserve deference." *Ornelas v. United States*, 517 U.S. 690, 699 (1996). The state court judges, presumptively, evaluated the record in good conscience and issued the warrants

based, in part, on their own understanding of human nature, guided to an extent by reassurances supplied by an expert in criminology. They were not tasked with a physics problem susceptible to mathematical reduction. And to the extent that they contemplated the probabilities of recovering physical cold case evidence, I reject Defendant's contention that they did so only as the result of misdirection on the part of Lieutenant Weisgerber.

Nor would I find it appropriate to afford an exclusionary remedy that suppressed firearms discovered following law enforcement's entry into Defendant's home. "The exclusionary rule provides that evidence seized in violation of the Fourth Amendment is ordinarily remedied by suppression." *United States v. Pimentel*, 26 F.4th 86, 90 (1st Cir. 2022). However, the exclusionary rule is not a constitutional rule. *Davis v. United States*, 564 U.S. 229, 236 (2011). The Fourth Amendment "says nothing about suppressing evidence" obtained in violation of its commands. *Id.* Instead, the exclusionary rule is a prudential doctrine designed to "compel respect for the constitutional guarantee." *Id.* (quoting *Elkins v. United States*, 364 U.S. 206, 217 (1960)). This means that no defendant has a personal, constitutional right to the exclusion of evidence secured in violation of the Fourth Amendment. *Id.* "The rule's sole purpose . . . is to deter future Fourth Amendment violations." *Id.* at 236-37.

"[R]ecognizing the serious social cost of allowing the guilty to evade justice, the Supreme Court has recognized an exception to the rule when it comes to searches pursuant to later invalided warrants. *United States v. Leon*, 468 U.S. 897, 908, 922 (1984). In multiple cases it has held that the exclusionary rule should give way "when an officer acts in 'objective good faith' such that any 'marginal or nonexistent benefits produced by

7

suppressing evidence . . . cannot justify the substantial costs of exclusion.'" *Pimentel*, 26 F.4th at 90 (quoting *Leon*, 468 U.S. at 920, 922). Thus, "[e]ven assuming the evidence was seized in violation of the Fourth Amendment, the evidence will be suppressed only when the police conduct is 'sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system.'" *United States v. Echevarria-Rios*, 746 F.3d 39, 41 (1st Cir. 2014) (quoting *Herring v. United States,* 555 U.S. 135, 144 (2009)). Conversely, "when the police act with an objectively reasonable, good-faith belief that their conduct is lawful . . . or when their conduct involves only simple, isolated negligence . . . the deterrence rationale loses much of its force, and exclusion cannot pay its way." *Davis v. United States*, 564 U.S. 229, 238 (2011) (cleaned up).

Although *Leon* recognized that a search based on a warrant later invalidated will not ordinarily call for application of the exclusionary rule, application of the exclusionary rule remains appropriate, notwithstanding issuance of a warrant, where: (1) the search warrant affidavit contains information the affiant knew to be false that would have misled the magistrate or judge; (2) the circumstances reflect that the magistrate or judge abandoned the judicial review role; (3) the affidavit is so lacking that the executing officers' professed belief in the existence of probable cause is entirely unreasonable; or (4) the warrant is "so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." *United States v. Levin*, 874 F.3d 316, 322 (1st Cir. 2017) (citing *Leon*, 468 U.S. at 923, and *United States v. Woodbury*, 511 F.3d 93, 99 (1st Cir. 2007)). The burden of showing that officers

acted in good faith rests with the government. *United States v. Diehl*, 276 F.3d 32, 42 (1st Cir. 2002).

Based on my review of the search warrants, the warrant application, affidavits, and related materials, and the supplemental email introduced in support of Defendant's motion to reopen, I see no basis to conclude that the first, second, third, or fourth situation has any application when it comes to the search for evidence of the cold case and the resulting seizure of firearms. To the contrary, I am comfortable with the conclusion that the animating purpose of Weisgerber's search warrant affidavit was to aid in the effort to secure a conviction for the cold case homicide. In other words, the new email evidence that Defendant relies on to request reopening would not move me to depart from Judge Woodcock's *Leon* finding. *See United States v. Walker*, 840 F.3d 477, 484 (8th Cir. 2016) (finding a motion to reopen a suppression hearing was properly denied where the new evidence the defendant wanted to present would not impact the court's ruling);

I would also find it proper to focus any further review on the evidentiary components of the pending firearms prosecution given the dismissal of the child pornography prosecution. Assuming that the search for evidence left the "good faith" zone when Detective Paulino performed a targeted search for child pornography, the child pornography prosecution has since been dismissed. I am not persuaded that the marginal deterrent benefit of a further firearm exclusion justifies the price paid by the justice system. Stated otherwise, the dismissal of the child pornography prosecution is well calibrated to serve the prudential interest in compelling respect for the constitutional guarantee.

9

## Conclusion

For the reasons set forth above, Defendant's Motion to Re-Open Consideration of Motion to Suppress (ECF No. 111) is DENIED.

SO ORDERED.

Dated this 16th day of August, 2023

/s/ Lance E. Walker
United States District Judge